Good morning. May it please the Court. I'm J.P. Kemp. I represent the plaintiff-appellant Tomas Perez. I'd like to reserve five minutes for rebuttal, and I'll keep an eye on the clock. In this case, there is plain legal error. The verdict form, Question 1, the jury committed plain legal error on the substantive law of the FMLA. The jury instructions that they were given, particularly Jury Instruction No. 13, which is Excerpts of Record 022, told the jury that a serious health condition was an illness, injury, or physical condition that involves continuing treatment by a health care provider. And that's all set forth in 29 U.S.C. 2611, subsection 11 is the definition. And also 29 CFR Section 825.113A. Further, 29 CFR Section 825.115 defines that continuing treatment as, I'm sorry, it requires that there be more than three consecutive days of incapacity in treatment, treatment two or more times within a 30-day period of the first day of the incapacity. It's uncontested in this case. It is absolutely on November 1st of 2017, Mr. Perez goes and sees Dr. Black at the Golden Health Clinic and is taken off work until November 6th. That's clearly more than three consecutive days. And he's diagnosed with chest wall contusion. And ultimately, later on, he is diagnosed specifically with muscle spasms and fasciculations, things that are involuntary movements that cannot be faked. It cannot be fraudulently done. The doctor placed hands on Mr. Perez and says, you've got muscle spasms, I see the fasciculations, I'm putting you on Flexeril. Flexeril is a muscle relaxant. You can't drive 26-ton haul trucks underground 12 hours a day if you're on a muscle relaxer like Flexeril. It just isn't safe. And so the doctor took Mr. Perez off work. Mr. Perez didn't ask for this. He comes up out of the mine, hits the cold air, and suddenly his chest seizes up. He reports it to a mine safety person. They take him to the room where they examine people, and then they take him on to Dr. Black. He's got a serious health condition, and the jury's verdict, their answer to question number one, is simply not consistent with the law. It's plain legal error. They can't make it. There was other evidence that the employer believed that your client was fabricating the fact or extent of the injury. So your position would be the jury could not credit that in the face of Dr. Black's treatment? And that, I think, is the nub of this case. It is a question of first impression. We have the case of Sims v. Alameda Contra Costa Transit District from the Northern District of California that we cite that says the consequences of not following the regulations in the statute with respect to getting a recertification within the first 30 days, on one hand. And more specifically in Sims, they're really talking about the second and third opinion. If an employer thinks that an employee is faking it, if they think that somehow or another the leave is something that's not entitled to, then the law specifically provides this process. But isn't the language in the provision all discretionary? It doesn't mandate that this must be done. It just is a helpful suggestion as I read it. What am I reading incorrectly? Well, it uses the word may. And as the court in Sims found, that word is used in the context of the public policy, the legislative history, and everything related to the FMLA's procedure. That word may is ambiguous here. And when the court analyzed it, it says it can't be that an employee brings certification from a doctor saying that they have to be off work and on leave under the FMLA, and that the employer can just sit there and say, yeah, we don't believe you. We're not going to grant you that. We're not going to get a second opinion from a doctor. It's just our subjective belief that you are not sufficiently. It's not just subjective here. I mean, there was videos. There was all kinds of other. There was statements of other employees. So, I mean, the employer runs some risk, I suppose, in not getting a second opinion. Here they didn't do that. But what tells us, I mean, that they have to? You have Sims. Sims. But it seems like not everyone has agreed with Sims. Not everybody has. There are a few cases that have. The most recent one, I think, we found from 2021, Spermitzler, I think, was the name of the case. It's cited in our reply brief. What's the lineup on this issue? So, I mean, you've got Sims. Does anybody agree with Sims? Yes, there are some district court, as I was mentioning, the case that we cited, I think it's called Spermitzler, the district court. Okay. How about circuits? I have not found anything in any of the circuits. Okay. How about on the other side of, you know, the circuits that disagree with Sims? There are some cases at the circuit level that, as Judge Tonem said, this is merely a permissive procedure that they can follow. So, are you asking us then to basically disagree with those? If you are, that's fine. I just want to make sure. I am. I'm asking you to agree with Sims because I think if you read that case, its analysis is spot on. This is the way it has to work. If the employer can just ignore what the doctor has to say and take the whole thing in and have a court decide, that's not the way this is intended. And that comes back. But the employer would face the risk that it may lose at trial if they do that. And Sims said, yeah, but, you know, for an employee to even get there, to be able to find an attorney, to be able to have the wherewithal to actually bring the case, that not many will. Suppose the facts were even more egregious than this. Suppose an employee says he needs to lift boxes for his job, but he can't because he sprained his shoulder, and the company hires someone to videotape him, and they see him at Muscle Beach in Venice, you know, bench pressing 300 pounds, clearly can lift. Does the employer in that case still have to get a certification from, you know, or second medical opinion? I believe that under Sims the way that it works they do need to because what needs to happen is it needs to go to a doctor, have the doctor review the video, and say, yeah, this person doesn't need to leave or leave of absence. Because you rob, in this case you rob Mr. Perez. He loses his $100,000 job based on what the employer says without having the benefit of the employer saying, we disagree, let's have another doctor look at it, and then getting the third opinion if there's a difference between the two. It takes away his opportunity. He has no recourse against this. Well, recourse is filing a lawsuit. It is to file a lawsuit in court. All right, and that's where we think that, and then when you're in court, the jury instructions should be read, the instructions that we presented at ER 37 and 38 regarding the recertification and the second opinions, those jury instructions should be given because a jury could look at that and say, this employer has the right, it has the tools, and it didn't use it. Now, why might it not have used those tools? It's because maybe they had a result in mind that they wanted to pursue and they weren't interested in getting at whatever the truth might be. Getting back to the point, Mr. Perez, the only restrictions he had was don't drive haul trucks underground on those bumpy roads 12 hours a day, and particularly don't do it on Flexerill. It didn't say that he couldn't go to a casino. It didn't say he couldn't do handyman work around his trailer. It didn't say that he couldn't drive his personal vehicle as opposed to a big dump truck. None of the things that they point to in those videos are things that the doctor said that he couldn't do. So not providing the jury with the instructions that, hey, they have tools at their disposal, not only under federal law but under state law. NRS 6E.140 gives them the right to get a second opinion if they don't agree with what the workers' comp doctor has to say. So to not provide the jury with those instructions, it reflects on it, it skews the credibility. It skews the credibility determination of a jury because if they're not told that the employer had these tools and didn't use them, then they're left to believe, oh, Mr. Perez is just a liar. Was this Simms' rule, which is rather interesting here, was it preserved for appeal? Yes, it was. We made the argument, like I can say to this specific place, when we were arguing over jury instructions. It's at ER 74. Actually, it starts on 73 and goes over to 75. Was it included in a Rule 59 motion for a new trial? It was not. We did not bring a Rule 59 motion, Your Honor, mostly because we felt it would have been futile. The main issue is with the jury instructions, and there was just no indication that the court would have changed its mind. It would have been futile, and the law generally doesn't require parties to take futile actions. So refer back to our brief on all of the jury instructions we think should have been given and weren't given, and it really skews the analysis for the jury of the credibility to not know that the tools are available and that the employer just didn't use them. And it robs Mr. Perez of his opportunity to have that second opinion to assure the employer that what he's doing is okay and that he has a need for the leave. And also, just factually, by the time they took the video, he'd been on the muscle relaxers for three days, was feeling considerably better, and the doctor did say, you shouldn't be staying in bed. You should be up and doing things, getting back to normal. People heal on a continuum. It's not a light switch. It's not on the 16th of November or the 19th of November, suddenly he's all better after having stayed in bed. He gets better over the course of time. Unless there are other questions I'd like to reserve. Thank you. Thank you. Thank you. May it please the Court. My name is Jack Sholkoff, and I represent the Appalee-Barrick Gold Strike Mines. The Court should affirm the jury's verdict and the judgment of the District Court in favor of Barrick. Substantial evidence supports the jury's verdict, both that Mr. Perez did not have a serious health condition under FMLA, that's what the jury decided, and that Barrick did not fire him because he fired a workers' comp claim. The substantial evidence in the record is overwhelming. Mr. Perez worked in an extremely dangerous environment, a mine, sometimes a mile below the surface. Because it was a dangerous environment, the evidence showed that Barrick had rules regarding reporting of accidents, rules regarding employee integrity, which were critical to the safe operation of the mine. It took its safety precautions and requirements very seriously. There was evidence that Mr. Perez did not immediately report the accident but waited a few hours later. Ultimately, there was evidence that Barrick could not corroborate that the accident actually happened at all. Witnesses alleged that they saw Mr. Perez joking at the end of his shift. They claimed that they had learned that Mr. Perez was telling people that he had faked the injury in order to take time off to work on his rental properties. There was evidence that the doctor's certification of Mr. Perez's injury rested solely on Mr. Perez's own representations of his injury rather than some purely objective evidence. What about the spasms? Well, the spasms, he said that there was a — it's a word with an F, fasciculations, I think — that they existed, but that there was evidence in the record at ER 214, 15, 247, 248, and then in supplemental excerpts at 161, 65, where Dr. Black stated that essentially the claim was that he was in pain, and that came solely from Mr. Perez's injury. This wasn't as though they had seen something on an MRI or an X-ray. All of that was negative. Ultimately, the substantial evidence showed that Berrick believed that after, based on the investigation, the videos, the tip that it received, the witness statements, that Mr. Perez had not been, in fact, injured and did not have a serious health condition. Did Berrick show the undercover video? They did not show the video. They told him about it. They brought him in, and they said, look, we've done an investigation. We've — this is at SCR 183, and said that we see that you're working on your rental properties. And Mr. Perez's response was, I have nothing to say. He didn't oppose that, didn't say anything. And based on that ground, they terminated his employment. Now, Mr. Perez comes to this Court and suggests that the Court should overturn the verdict because it is, quote, against the manifest weight of the evidence and not supported by the evidence, and that there's no substantial evidence to support it. The problem is that he waived these issues. He made no post-trial motions. He made no pretrial motions on the serious health condition issue. The issue with regard to waiver is very clear, that there were several ways that Mr. Perez could have brought to the district court his argument that there was no second opinion and that this somehow meant that as a matter of law, Mr. Perez had a serious health condition. He could have moved for partial summary judgment. In fact, that's what happened in the Sims case. He could have moved in limine to exclude any of the evidence contradicting his claim that he had a serious health condition. He didn't do that. Most importantly, he could have moved pursuant to Rule 50a, that as a matter of law, that he had a serious health condition because there was no second opinion. When that didn't work and it went to the jury and he lost, he could have and should have renewed his motion pursuant to Rule 50b. He also could have moved for a new trial pursuant to Rule 59. He did none of that. And as a result, he has waived his argument, his that there is insufficient evidence. That is absolutely clear under the cases we cited in our brief. Unitherm, NITCO, Brown, and even the recent case last year in Dupree v. Younger, the United States Supreme Court addressed this issue and said that you can preserve purely legal issues by moving for summary judgment alone, but noted that a prudent lawyer will always raise legal issues in a post-trial motion. He had ample opportunity to do that. He's trying to style this as a legal argument, this argument based on Sims. So what's your response on this, that based on the statute, that Perez says, well, listen, you know, I brought forward medical evidence. You need to rebut that with medical evidence. Sure. So the to determine the second opinion issue, as I like to fashion it, I think that, which I don't think is properly brought, but assuming that it is, there are four circuit courts of appeals that have addressed this issue specifically. The Sixth Circuit in Novak v. Metro Health Medical Center, and that's 503 F3rd 572, recognized that the language of the Family Medical Leave Act, specifically 29 U.S.C. Section 2613c1, is permissive. That section states, in any case in which the employer has reason to doubt the validity of a certification, the employee may require at the expense of the employer that the eligible employee obtain the opinion of a second health provider. It doesn't have to. And the Sixth Circuit said that it is, quote, merely permissive. Therefore, an employer's failure to require a second certification does not preclude the employer from contesting the employer's certification. I read Sims, I think, to state that, although the language says may, it admits that, but it also suggested in some cases it may be such that the facts would require a second opinion. Is that just plain wrong? Well, I think that Sims, contrary to the Sixth Circuit, the Second Circuit, the being permissive, that the end, and just simply got it wrong, I think, in the sense that the Fourth Circuit rejected, and that was in Rhodes v. FDIC, and that's 257 F3rd 373, and again says you've got to look at the statute. When you're interpreting a statute, the first thing you do is you look at the plain language of the statute. May is permissive. Sims said, well, but there may be circumstances that the employer, it would be unfair to the employee to make the employee have to bring a lawsuit instead of getting a second opinion. And essentially, Sims didn't like the policy result. And instead of following the statute, if Congress wanted to make it mandatory, it knows the difference between may and shall. The Eighth Circuit came to the similar conclusion in Murphy v. FedEx National, and that's 618 F3rd 893. And for what it's worth, just as a way, interestingly, that the California Supreme Court, in interpreting the very same language under California law in Lonick v. Sutter Health Control, and that's 43 Cal 4th 201, said it is permissive. There are only two cases that we – that are cited by the other side. There's Sims and Schemertlitzer, both district court cases. And both, I think, if you look at the facts, are outliers. They're both distinguishable. They did not involve a situation like our case, where the employer obtained additional information and separate evidence that called into question the veracity of the certification. They were not reinstatement cases the way our case is. Remember, in our case, Barrett gave him the leave based on the certification. And it was only later, when they learned, they received a tip that said, you know, maybe the guy is faking this. And then they investigated it, and then they said, you know, we're not going to reinstate you, and we think you've essentially committed fraud. And the FMLA is very clear that a person who fraudulently obtains leave is not entitled to reinstatement and not entitled to any benefits. I gather you deal with cases in this area maybe more than we do. What, in your experience, is employers' practices for getting a second medical evaluation? Is it typically done in cases like this, or are there cases where employers will just say, we don't think we need that here? What are the considerations that go into that? Well, I can certainly represent to the Court that I've been practicing employment law for more than 30 years. It is extremely unusual that an employer would ever get a second opinion. In most cases, what happens is exactly what Barrett did here. Doctor said he needs to leave. They give him the leave. And it's only when they get information that suggests an issue with regard to that leave that they, well, let's find out. And because I think there's a... Because they usually just rely on the first opinion and are comfortable with the doctor, absent something else? Usually. Usually I think that the expense, because if you get a second opinion that disagrees, you're going to get a third opinion. And in many cases, the leave isn't long enough for that to even play out. And so, I mean, one could — and so typically what happens is the person gets a leave and they come back. And then if they find out that it was — it appears to have been fraudulent the way it was here, then they will investigate. That's not unusual. That often happens in workers' comp cases, like this one, which was also involved workers' comp. And then they found out they had video of the guy fixing his house. And so they asked him about it, and he said, I have nothing to say. And so they fired him. I mean, that's what happened in this case. That's what was presented to the jury. And the jury ultimately is the one that decides whether he had a serious health condition. And they didn't believe that he did. And it wasn't for — certainly not at the court to second-guess the jury when there's been no post-trial motions. The district court saw the trial. If there had been a motion for new trial or a motion for new judgment and the district court thought something untoward had happened, that's the point where it's — the change is supposed to be made. So — So you make a good argument on waiver here on this Sims rule issue. But it is a And it is discretionary for the court to take it up. Do you think we should take up this issue? I don't. I don't. I think that it was waived. And I think that to the extent — this is not, frankly, the case, I think, to examine the second opinion issue when there is so much evidence coming in in court showing that the — raising a serious factual question as to whether the person had — whether Mr. Perez had a serious health condition, that has to be decided by the jury. And I think that — I think it was waived. I think that, essentially, they are saying as a matter of law, based on whatever the facts were, that he has a serious health condition. Because, remember, the jury decided that he had no serious health condition, which cut off the rest of the inquiry. So there was no inquiry about — no serious health condition. There's no family medical leave. It ends. So there was no question — there was no discussion after, well, if he had a serious health condition, was there — was there fraud indicated? Was there — you know, what else happens after that? In this case, the jury just decided, no serious health condition. And I don't think it's an appropriate vehicle to decide — to decide this issue. And we just have a few words to add about the retaliation claim. Mr. Perez argued, again, it was waived, but he argued that the jury instruction regarding the Nevada spotter statute, that is ER 47, should have been given. And it wasn't. And the reason that it wasn't is because there is no private right of action to enforce that statute. So the only remedy, if somebody believes that that statute has been violated, is go to the state. The state can get a $500 fine. The district court in Nunez v. Sierra Nevada Corporation, that's 677 F. Supp. 1471, specifically said there's no wrongful termination and breach of public policy claim for violation of that statute. So it's — it's essentially irrelevant. I think, at the end of the day, the court of appeals decisions interpreting FMLA really ought to be persuasive and controlling here, that the jury's verdict ultimately is supported by the substantial evidence. Mr. Perez waived his legal and instructional attacks. Barrick terminated Mr. Perez because it believed Mr. Perez was not honest when he was claiming he was injured. It reasonably believed that Mr. Perez was not eligible ultimately for family medical leave and reasonably concluded that he showed a serious lack of integrity about safety issues, a failure that could have proven tragic in a working environment as dangerous as a mine. The court should affirm the judgment below. Thank you. You just heard a lot about what the employer reasonably believed. Batchelder v. America West Airlines says there is no good faith defense to a FMLA claim. It doesn't matter what they believe. It doesn't matter what their good faith was. All that matters is, did Mr. Perez have a serious health condition? And unequivocally, he did. The doctor took him off work for more than three days. The doctor found that he had spasms. The doctor put him on Flexeril. All of this is undisputed. He meets the definition. The jury got this completely wrong as a matter of law. Now, as to these waiver arguments, this was all preserved. These legal rulings were made by the district court. For example, with respect to the issue with SIMS, at page ER074 of the record, the court, as part of its ruling, with our request that it give this instruction and with our contention that there was an obligation to check with the doctor or to get a second opinion, the court said, okay, I'm going to deny it. I don't think there's a duty, but there is a right by the employer to ask for. He made the legal ruling contrary to SIMS. That is clearly in the record. It's clearly preserved. There was another issue with the NRS 613.160. That was also preserved in the record. It's at ER pages 82, 83. The issue there is, while there is no private right of action, Nevada law is still, it is unlawful to terminate someone based upon the report of a detective that goes to somebody's credibility, their veracity, whether or not they're telling the truth, which is exactly what we have here. It is unlawful to fire somebody for that. That's the law, whether there's a private right of action or not. There is a private right of action where we've claimed that he was fired for filing the workers' compensation claim for pursuing his rights under the Nevada Industrial Insurance Act. In response to that, they're saying, yeah, but we reasonably believe that he was a liar and a cheat and a fraud. They can't get away with that under 613.160. They didn't show him the video. They didn't show him the report. They didn't give him the name of the detective. They didn't tell him anything about that. They said, we've seen some things that makes us think that you're not telling the truth. They don't put him on proper notice. The statute requires notice and the opportunity to ask for a hearing. If they don't give him the notice, he doesn't know to ask for the hearing. All right? So NRA 613.160, that's that issue. Also, it is very common. Did you object to the admission of the videos at trial? Ultimately, no. I don't really recall right now, Your Honor. But ultimately, they came in and I don't think that we objected in the final analysis. So workers' comp, they get second opinions under 616.140 all the time. The judge said he was going to give our instruction on that. And then he didn't. I think he just forgot. And then he said, well, I'm not going to. So all of the instructions should have been given. He can't fake this. He was examined. The hands were placed on him by the doctor. The doctor made the diagnosis. It doesn't matter what Mr. Perez said. And they had some evidence that he said, oh, well, you know, I could fake an injury. You can say that, but then if you actually have an injury, it doesn't mean that you're lying about the actual injury. That's what's going on here. Before you sit down, can I ask, what's at stake monetarily in the case? What were you asking for? Actually, so with FMLA, by the time this got to trial because of the pandemic, there was about five years of pay. He made over $100,000 a year. And under the FMLA, you have liquidated damages that could be an amount equal to, so theoretically, a million dollars. And so, Your Honor, this is an important case. This is a case to consider. Sims was not waived. The court made the legal ruling, and it would have been futile for us to bring post-trial motions. The judge was not going to change his mind. He made it very clear. If you read through the transcript, he's quite resolute that he was not going to change his mind. So this is teed up, and it is the issue of Sims. The courts that have looked at it in this way, I think they've created a situation where the FMLA is a hollow vessel. It can't be that it all depends on whether or not the employer reasonably believes that somebody is faking or not. And in terms of their affirmative defense, Mr. Perez, you can't say that this was unrelated to the leave. His leave, what was happening with his leave, why he had the leave, all of that was related to the reason that they terminated him. So I don't think their affirmative defense makes it either, but as counsel, my friend, pointed out, jury never got to that because they never get past question number one, which they got wrong as a matter of law. I don't know if we have time, unless there are some other questions, Your Honors. Great. Thank you both for the helpful argument. The case has been submitted, and we are recessed for the day. All rise.
judges: LEE, BRESS, Tunheim